RALPH PUTNAM, APPELLANT, v. W. L. COATES ET AL., RESPONDENTS.*

In the Springfield Court of Appeals. Opinion filed April 22, 1926.

1.—Injunction. Injunction lies in the sound discretion of the court.

2.—Same. Injunction ought not to issue where it will work oppression or where plaintiff, by his own acts, puts himself in a position that he ought not to ask it.

3.—Same. Injunctive relief will not be granted where the injury is small or technical.

4.—Same. Court cannot grant an injunction merely to allay the fears and apprehensions of individuals, but they must show that the acts against which they ask protection are not only threatened, but will in all probability be committed to their injury.

5.—Same. Court's power to issue injunction should be exercised with great caution and only where the reasons therefor are clearly established.

6.—Same—Restraining Officer from Entering Park. Injunction, restraining deputy constable of township from entering park to which public was admitted without charge, will be dissolved, as under section 2151, Revised Statutes of 1919, he could as an officer serve warrants, etc., throughout the county, though he had criticized the management and predicted that it would be closed when manager discharged him as park police officer.

7.—Same—Matters Occurring After Filing of Petition. Matters occurring after filing of petition for injunction and before trial on merits may be heard by court in exercise of its discretion.

8—Same—Evidence of Act Occurring after Filing Petition Competent. In suit to restrain deputy constable of township from entering quasi-public park in which he was commissioned by owner as park officer, evidence of

revoking of constable's commission as deputy constable during trial and after petition was filed **held** competent.

**9.—Same—Temporary Injunction Held Properly Dissolved.** Injunction, restraining discharged checkroom manager from entering park, will be dissolved, though she caused lessee of park some trouble in attempting to enforce her checking privilege, where it did not appear that she threatened to do anything in the future, and she had been prevented from entering park for more than a year, under the rule that a court of equity will not attempt to restrain the doing of any work which has already been accomplished.

\*Corpus Juris-Cyc. References: Injunctions, 32CJ, p. 29, n. 13; p. 33, n. 28, 34; p. 43, n. 9; p. 50, n. 71, 72; p. 67, n. 13; p. 404, n. 45; p. 405, n. 60; p. 426, n. 49 New.

Appeal from the Circuit Court of Jasper County.—Hon. Grant Emerson, Judge.

AFFIRMED.

*T. C. Tadlock* and *McReynolds & Blair* for appellant.

*Morrison Pritchett, Owen & Davis* and *W. R. Robertson* for respondents.

BAILEY, J.—This is an injunction suit to restrain defendants from entering a certain park in Jasper County known as Lakeside. A temporary writ was issued August 18, 1924. The cause was tried on its merit and judgment entered dissolving the injunction on January 31, 1925, from which judgment, plaintiff has appealed.

The evidence indicates that Lakeside Park, consisting of approximately 100 acres, is owned by the Southwest Missouri Railroad Company. In May, 1924, said company leased this park to plaintiff for a period of one year with option to renew said lease from year to year for a period of five years. After obtaining the lease, plaintiff went into possession and has since that time operated the park as a place for public amusement and pleasure. This part has been in existence for some twenty-five years and during that period has been a popular resort where admission to the grounds was open to the public without charge. Defendant W. L. Coates had acted as a police officer at the park for about seventeen years and until this controversy arose. Part of the time he had a commission as deputy constable of the township in which the park was situated and at other times had held a commission as deputy sheriff of Jasper County all for the apparent purpose of vesting him with proper authority to make arrests and keep the peace. After taking possession of the park, plaintiff employed defendant W. L. Coates to continue to act as an officer at the park for the season of 1924. At that time plain-

tiff evidently considered him an officer with a deputy constable's commission.

It also seems that during all these years defendant, Mrs. W. L. Coates, wife of the said W. L. Coates, had enjoyed the privilege of checking wraps, baskets, etc., in the dance pavilion at the park. Plaintiff entered into a verbal agreement with her by which he granted to her the privilege of "checking" for the season of 1924, by the terms of which, she was to pay plaintiff fifteen per cent of all moneys received. Defendant, Mrs. W. L. Coates, contends that she had the right to check at all dances except small private party dances, while plaintiff contends she had the privilege only at regular dances which occurred twice each week. Later, on demand of plaintiff, the contract was changed so that plaintiff received 50 per cent of all receipts obtained by said defendant from checking. Trouble arose over the fact that said defendant put a padlock on the checking room apparently to enforce her rights to the checking privileges at all dances, which rights were being denied by plaintiff. As a result of this altercation, plaintiff discharged both of defendants about August 7, 1924, and on August 11th, filed a petition for a temporary writ of injunction restraining them from entering the park. It is well to note here that the petition charged that "since their discharge, defendants enter the park at divers times while patrons of the park are there and by their conduct, talk and behavior, seriously interfere with the business of the park" and that W. L. Coates has stated to concession managers that "he proposes to close down the park, to padlock the concessions and to close everything up, all of which tends to deter patrons from returning to the park and has, and if continued will, seriously interfere with the business of said park and of this plaintiff." The petition then alleges that the acts complained of will cause plaintiff irreparable damage and that he has no adequate remedy at law.

The evidence in relation to the acts complained of in the petition was given by plaintiff and several concession holders. The gist of this evidence was to the effect that defendant Coates criticized the management of the park and predicted that the park would be closed; he stated to Mr. Sturgis that he believed it would "be under lock by tomorrow morning;" there was some testimony that he threatened to close the place himself by virtue of his authority as an officer. He also threatened to arrest plaintiff if he bothered defendant's wife in regard to the checking privileges. These witnesses, in response to a question as to whether the talking of Mr. Sturgis had hurt their business, either answered in the negative or refused to state positively. In so far as defendant, Mrs. W. L. Coates is concerned, we find no evidence in the record that she made any remarks whatever about

the management of the park or plaintiff, except the testimony of plaintiff himself in which he names neither time nor place.

As heretofore stated, the petition for temporary injunction was filed August 11, 1924, and the temporary injunction granted August 18, 1924. When the petition was filed, defendant Coates was believed by plaintiff to be a deputy constable and he so stated. On the very day and just prior to the granting of the temporary injunction, the constable, M. Passley, at the solicitation of plaintiff, revoked the commission of defendant W. L. Coates and thereupon commissioned plaintiff as deputy constable. In relation to this point, the constable testified that plaintiff "told me the case would be over with and everything would be settled if I would take Mr. Coates' commission; they would get along all right and save costs."

"Q. In other words, they said the case was on trial and if you would take Coates' commission it would settle everything and everything would be straightened up?" A. "Yes, sir."

Plaintiff's counter-affidavit, filed on the day of the hearing on the application for the temporary writ, likewise states that defendant's commission as deputy constable "has been this day revoked and terminated by M. Passley." On the 19th day of September, 1924, defendant W. L. Coates was reappointed deputy constable and held a commission as such when this cause came on for trial on the merits in January, 1925.

Plaintiff charges that the judgment of the court dissolving the injunction is against the law, against the evidence and is for the wrong party. Great stress is laid on the case of Sharp v. Whiteside, 19 Fed. 156. Plaintiff in that case evidently owned considerable land at the top of the famous Lookout Mountain in Tennessee, which land she had enclosed and charged admission to those who desired to enter. She claimed the right to refuse admission to those who were not brought to the park by a particular transportation company with whom she had a contract. No public use had ever been impressed upon her lands either by the Legislature of that State or by herself. The court held that "As her private park, she had a right to enclose it; after the enclosure she had the right to admit as many or as few within the enclosure as she pleased—She holds her property subject to her control just as others hold theirs, until it is applied to the public use by an act of sovereign power through methods known to the law, or until she appropriates it by her voluntary act to the use of the public. A court cannot appropriate it to such purpose against her consent." Other cases are cited indicating that the owner of places of amusements may, in their discretion, refuse admission to any person, who, in the past has caused disturbances; but in all these cases the place of amusement was purely private in character, and the refusal was based on some good and sufficient reason.

It may be that notwithstanding the fact that Lakeside Park has been used for twenty-five years by the public without charge at the gate, it still is purely private in character and that the owner or even the lessee may refuse admission to such persons as they do not desire to enter. We have found no case and learned counsel have cited none where the strong arm of equity has been invoked for any arbitrary purpose. Injunction lies in the sound discretion of the court. [Robins v. Latham, 134 Mo. 466, 36 S. W. 33; Bailey v. Culver, 84 Mo. l. c. 540; Clothing Co. v. Watson, 168 Mo. 133, 67 S. W. 391.]

The writ ought not to issue where it will work oppression, or where plaintiff, by his own acts, puts himself in a position that he ought not to ask it. [Shrainka v. Oertel, 14 Mo. App. 474.] It is also well settled that such relief will not be granted where the injury is small or technical. [Warren v. Cavanaugh, 33 Mo. App. 102; Dickhaus v. Olderheide, 22 Mo. App. 76; Butts v. Fox, 107 Mo. App. 370, 81 S. W. 493.]

We desire to further observe that the court cannot grant an injunction merely to allay the fears and apprehensions of individuals. They must show the acts against which they ask protection are not only threatened, but will in all probability be committed to their injury. [Lester Real Estate Co. v. St. Louis, 169 Mo. 227, 69 S. W. 302.] It is also true that "The power of the courts to issue injunction should be exercised with great caution and only where the reasons therefor are clearly established." [32 C. J. 33.]

To our minds the evidence in this case fully justified the trial court in dissolving the temporary injunction. As to defendant W. L. Coates, the injunction was properly dissolved, if for no other reason because at the time of trial, he was a duly commissioned deputy constable of the township in which the park was located and under our statute, had the power as such officer to serve warrants, process, etc., throughout the whole County. [Sec. 2151, R. S. Mo. 1919.] It is urged, however, that the court should not consider any evidence as to what may have occurred after the filing of the petition. This position is untenable. Plaintiff by his own affidavit stated the fact of the revoking of defendant's commission on the very day and during the trial on the temporary injunction, which was one week after the petition was filed. This evidence was competent; likewise, matters which occurred after the filing of the petition and before the trial on its merits may be heard by the court in exercising its sound discretion. [Gibson v. Powell, 96 Mo. App. 684, 70 S. W. 935; Alsager v. Peterson, 31 S. Dak. 452, 151 N. W. 391; Ann. Cas. 1915 D. and note.]

We do not undertake to hold that an officer who misconducts himself in another's place of business can shield himself with his star

or badge of authority. We are not called upon to pass judgment on that proposition. But we do say the facts in this case are not sufficient to justify a court of equity in denying to an officer of the law the right to enter this park for any purpose. None of the witnesses who had the concessions claimed they were damaged by defendant's statements. The whole case rather savors of an attempt on the part of plaintiff to use the courts to give vent to a feeling of enmity against these defendants, all aroused over the more or less trivial incident connected with the checking concession.

As to defendant, Mrs. Coates, there is practically no evidence that she said or did anything detrimental to plaintiff except in relation to the checking privilege. That water has gone over the wheel. There is practically no evidence that she threatens to do anything in the future. "It is familiar and well-settled law that a court of equity will not attempt to restrain the doing of any work which has already been accomplished." [Carlin v. Wolff, 154 Mo. 539, 51 S. W. 679; 55 S. W. 441.] Her contract, if she had one, has long since expired, and both defendants have been prevented from entering the park for more than a year.

What we have said disposes of plaintiff's objection to the introduction of the evidence as to W. L. Coates being commissioned as deputy constable. We do not believe it would serve any useful purpose to further consider the equities of this case. As to whether defendants were mere licencees or whether they had certain rights under their respective contracts with plaintiff, is immaterial as we view the evidence. Under the equitable principles heretofore announced, we find no reason for disturbing the judgment of the learned trial court. The judgment is accordingly affirmed. *Cox, P. J.*, and *Bradley, J.*, concur.