STATE OF MISSOURI, at the Relation of JOHN L. WOOD, CARL E. RICH-
ARDS, WILLIAM T. MEISSBACH, JOHN P. ROCHE, GEORGE E. SPEER,
JOHN V. KING, N. RUTH WOOD, NELLIE L. SNYDER, POITEAUX H.
BROWNE, and JACK D. FINK, Appellants, v. BOARD OF EDUCATION
OF THE CITY OF ST. LOUIS, MISSOURI, a Corporation, ET AL.—No.
40196.—206 S. W. (2d) 566.

Division One, December 8, 1947.

*Victor B. Harris* for appellants.

*Emmet T. Carter, James E. Garstang* and *Gerald K. Presberg* for respondents.

[566] DOUGLAS, P. J.—Plaintiffs are ten citizens and householders of the City of St. Louis who seek a judicial review of the policy of the Board of Education of that city of removing women school teachers who marry. Such a proceeding for the review of the management of the board is authorized by Section 10743 R. S. 1939, Mo. R. S. A. The occasion of this action was the dismissal of two women school teachers, after their marriage in the summer of 1941, under an ancient custom which became the announced policy of the board by the formal adoption of a rule in 1897 as follows:

"The rules that have been in force for many years referring to the appointment of married ladies, are continued without change, viz: The marriage of any lady [567] in the employ of the Board is considered as a resignation, and no married lady is to be appointed to a position."

This rule was reaffirmed by the board's Committee on Instruction in 1928 in the following declaration:

"Although no definite action was taken on the subject, it was the sentiment of the Committee that no married women should be employed in the Instruction Department, and that the Superintendent (of Instruction) should continue to act, in matters of this kind, in accordance with action taken by the Board in 1897."

Plaintiffs allege that about eighty per cent of the 3,300 teachers employed by the board are women. They contend that such a rule is unreasonable, arbitrary and illegal, and the court should so declare it. They also ask the court to prohibit the board from removing a woman teacher in the future solely because of marriage after becoming a teacher.

From a decree dismissing their petition plaintiffs have appealed.

The learned trial judge properly found the legislature has delegated to the board the power to exercise its judgment and discretion in matters affecting school management including the employing and removing of teachers, and a court may not interfere unless the board exercises such power in an unreasonable, arbitrary, capricious, or unlawful manner.

■ However, we must respectfully disagree with the learned judge's ruling that the board's action in removing the two women teachers because of their marriage was not unreasonable and arbitrary. We believe that the marriage of a woman teacher is not of itself alone a reasonable ground for removal under the applicable statute.

This case was filed and tried under Section 10730 R. S. 1939, Mo. R. S. A. before that section was amended in 1943. It provided: "The superintendent [of instruction] shall have power to suspend any teacher for cause deemed by him sufficient, and the board of education shall take such action upon the restoration or removal of such teacher as it may deem proper." Acting under this statutory authority the superintendent suspended the two teachers because of their marriage, and the board removed them.

Section 10730 provided further that all appointments and promotions of teachers shall be made upon the basis of merit.

In our latest discussion of that section we said: "Our statutes as construed in the two appeals of State ex rel. Brown v. Board of Education, [294 Mo. 106, 242 S. W. 85; 299 Mo. 465, 253 S. W. 973], heretofore discussed, establish some sort of tenure for the teachers . . . The Board could not arbitrarily discharge a teacher . . . " Gartenbach v. Board of Education, 356 Mo. 890, 204 S. W. (2d) 273. Since the statutes have created a tenure for teachers founded upon a basis of merit the power given the board to remove a teacher for reasons "as it may deem proper" is accordingly modified, and may not be exercised arbitrarily or unreasonably.

Teachers' tenure statutes have been the subject of extensive court review. See Annotations in 110 A. L. R. 791, 113 A. L. R. 1495 and 127 A. L. R. 1298. The general purpose of such statutes is not to grant special privileges to teachers as a class but to protect and improve state education by retaining in their positions teachers who are qualified and capable, and who have demonstrated their fitness, and to prevent the dismissal of such teachers without just cause.

■ The issue as to the right to remove a woman teacher merely for the reason of her marriage has also been frequently before the courts with decisions both ways. Perhaps the weight of decision upholds the right of removal based upon the fact of marriage alone but the cases are not helpful here because of differences in statutory authority and special contractual obligations. See Annotations 81 A. L. R. 1033, 118 A. L. R. 1079.

In this case no question is presented as to the relative efficiency in general of married and single women teachers. The efficiency of the two teachers whose removal gave rise to this case was not in dispute. Their records were satisfactory throughout their service,

and their removal was only because of their change of status [568] from single to married women. Under its established policy the board considered the marriage of a woman teacher as an automatic resignation, and women teachers who married were commonly instructed to resign. If they did not do so, no doubt they were removed as in this case.

The evidence adduced by plaintiffs demonstrates that the status of marriage does not necessarily affect or reduce the competence of a woman teacher. A survey by the National Education Association found married women teachers on the whole as effective and efficient as single women teachers. The report of a "Survey of Public Schools of St. Louis, Mo. 1939" with George D. Strayer as director of the survey states: ". . .. Of equal significance for the education of children is the policy of barring married women from teaching. While St. Louis is not alone in the adoption of this restrictive measure, the practice is no less objectionable when viewed in terms of the loss or waste suffered by eliminating married women from the ranks of teachers. All the studies which have been made of this controversial issue point conclusively to the fact that married women are equally as efficient as their unmarried sisters, and in some respects are better able to cope with the problems of youth. It is the opinion of the survey staff that residence, marital status, religion or politics should not be the criterion for selecting or retaining teachers. They should be chosen and continued in service upon the basis of their teaching skill and upon their proficiency in the class room."

Dr. Willis H. Reals of Washington University testified research has disclosed that married women as a rule surpass slightly single women in their teaching. Other distinguished educators testified that marriage itself was no disqualification but that efficient teachers became more efficient with marriage.

The board relaxed its rule against married women teachers during the emergency of the war. Its action was recorded: "In order to obtain enough qualified teachers to serve as temporary substitutes in the high and elementary schools, it is recommended that the Superintendent of Instruction be authorized to call into temporary substitute service married women whose preparation meets the present standard requirements for high school and elementary school teachers in St. Louis, to serve as needed . . ." Thus the board itself recognized that married women teachers may be qualified.

The evidence shows the board's rule against employing married women teachers was based upon a policy which did not consider the merit or efficiency of married women as teachers but upon an economic theory that women teachers who are married should forfeit their positions in favor of single women teachers because the married

women teachers have husbands who are capable of maintaining them. Such a policy, however, is contrary to the principle of teachers' tenure statutes which are based on merit and ability. Under the board's policy the financial position of a woman teacher would be the test of her right to hold her position, rather than her fitness and ability. This policy may have been in conformity with prevailing opinion in 1897 when Section 10730 was first enacted and the board's rule formally adopted. If so, "the old order changeth, yielding place to new." And this policy is even more out of line when considered with the amendments to Section 10730 adopted in 1943, and clearly violates the intent of the amendments. In a new section, 10730 a, Mo. R. S. A., Laws 1943, p. 899, sec. 2, the tenure of teachers has been strengthened and approaches a degree of permanency. That section provides a teacher's appointment shall become permanent after a period of probation, and she may not be removed except for stated causes, and marriage of women teachers is not specified. Thus, retaining teachers on a basis of merit has been even more greatly emphasized.

Our conclusion is that the board's rule requiring the removal of women teachers solely on the ground of marriage is unreasonable and arbitrary and violated the intent of the then applicable statute.

The judgment of the trial court should be *reversed,* and the cause *remanded* for [569] the entry of a declaratory judgment in conformity with the views expressed herein and for the relief prayed.

It is so ordered. All concur.