Joe E. HENSON, Larken Henson and Jessie Chapman, Trustees of and for the New Hope Primitive Baptist Church, Plaintiffs-Appellants,

v.

James PAYNE, Lee Ware, Floyd Calton and Elmer Calton, Defendants-Respondents.

No. 7516.

Springfield Court of Appeals.

Missouri.

Nov. 20, 1956.

J. W. Grossenheider, Lebanon, for appellants.

Charles Farrar, Theo G. Scott, Buffalo, for respondents.

McDOWELL, Presiding Judge.

Plaintiffs appeal from a judgment of the Circuit Court of Dallas County, Missouri, dissolving a temporary injunction releasing the bondsmen thereon and dismissing plaintiffs' petition.

The petition, filed August 12, 1955, alleged plaintiffs were the duly elected, qualified and acting trustees of the New Hope Primitive Baptist Church and have exclu-

sive rights, title and interest in the church properties therein described.

That said church is an unincorporated, voluntary religious association with regularly adopted rules and provisions for self government.

That on June 22, 1946, a controversy arose between the members of the church which resulted in an action being filed in the Circuit Court of Dallas County and a judgment rendered January 13, 1947, declaring plaintiffs and others were in the majority and represented a majority of the membership of said church; that plaintiffs were entitled to the exclusive possession, use and control of the church property and church building and that defendants were not members of said church and have no rights, title or interest in the described church property.

The petition stated that defendants, their agents and persons claiming under them continually harassed plaintiffs throughout the years and are now forcibly entering upon the church property against the wishes of plaintiffs and in violation of the court decree; that defendants, their agents and representatives threatened to construct a building on a portion of the church property west of the acre where the church house sets, contrary to the court decree and the wishes of the majority of the members of the church; that the alleged construction work has commenced and will continue to harass plaintiffs and the members of the church and that defendants will continue to forcibly enter upon the church premises without consent of plaintiffs and in violation of the court decree and will attempt to deprive plaintiffs and the church members from the use of the church premises and buildings.

The petition further alleges that defendants and persons claiming under them are destroying the church property, using electricity and fuel belonging to plaintiffs and the members thereof without compensation and against their will.

It pleaded that if defendants are permitted to continue the acts pleaded herein plaintiffs will suffer an irreparable injury and be subject to a multiplicity of actions to protect their rights.

The prayer was for a restraining order enjoining defendants, their agents and representatives, from entering upon and taking possession or attempting to take possession of the aforesaid mentioned property and church house and from continuing to attempt to construct a building on the church premises.

The answer filed was a general denial and an admission that there had been a former adjudication of the rights of the parties in the Circuit Court of Dallas County as pleaded.

Upon the pleadings the court issued a temporary injunction as prayed for in the petition.

On December 7, 1955, the cause was tried by the court and judgment entered dismissing plaintiffs' cause of action.

On December 8, 1955, plaintiffs filed an after-trial motion to amend the judgment. This motion is as follows:

"Come now the plaintiffs and respectfully move this Court to amend its judgment entered on the 7th day of December, 1955 by reinstating plaintiffs petition and making the temporary writ of injunction permanent on the following grounds:

"1. That under the uncontroverted evidence adduced and under the law applicable to this evidence the Court should have made the temporary injunction heretofore granted, permanent.

"2. That the judgment entered is contrary to all of the evidence adduced and to the law applicable to the undisputed facts in evidence.

"Wherefore, plaintiffs respectfully pray this Court to amend the judgment entered herein as aforesaid and to find the issues for the plaintiffs and order the temporary

injunction heretofore granted to be made permanent."

On December 9, 1955, the court entered judgment on this motion to amend, which reads:

"Now on this day the plaintiffs Motion to Amend Judgment having been submitted to the Court for ruling without argument, the Court, having fully considered the same, does hereby amend the judgment heretofore entered in this cause as follows: Upon the evidence heard in this cause and the statements of counsel, the Court does hereby dismiss the plaintiffs' petition and dissolve the temporary injunction heretofore issued herein and does determine that the defendants are entitled to no damages for the issuance of said injunction, and the sureties on the injunction bond are hereby forever released and discharged. The costs in this matter taxed to the plaintiffs."

No motion for new trial was filed and the appeal was taken from the judgment entered on December 7th and from the order of the court overruling plaintiffs' motion to amend made on December 9, 1955.

■ In this motion to amend the judgment the only question preserved for appellate review is that of the sufficiency of the evidence to support the judgment. Supreme Court Rule 3.23, 42 V.A.M.S.

Under Section 510.310, subd. 3 RSMo 1949, V.A.M.S., it is provided: "Upon motion of a party made not later than ten days after entry of judgment the court may amend the judgment and opinion. The motion may be made with a motion for a new trial."

So the appeal in this case was from the final amended judgment entered by the trial court on December 9th and the only question presented to the appellate court for review is the sufficiency of the evidence to support the trial court's judgment.

We here state such part of the record evidence as we deem necessary for a proper determination of the issue involved.

The New Hope Primitive Baptist Church is an unincorporated, voluntary religious association organized in 1877 in Dallas County, Missouri. Its property consists of one acre of ground on which the church house is located. The deed to this property, dated March 14, 1877, is in evidence as plaintiffs' exhibit 5. This deed is made to the trustees of the New Hope Primitive Baptist Church and their successors in office. Adjoining this acre of ground, and just west thereof, is an acre of land deeded to the New Hope Primitive Baptist Church on January 6, 1930, by E. F. Gannon and Julia Gannon, his wife. It is admitted that the legal title to this acre of land is in the Gannons for the reason that the unincorporated, voluntary organization cannot hold legal title. This acre of land is where the disputed building was attempted to be erected by defendants and which constitutes the principal complaint of plaintiffs for injunction.

In June, 1946, a dispute arose among the members of the church as to the conduct of the preacher. At the time of this dispute the original trustees of the church had died and it had no trustees. At the business meeting of the church a motion was made to dismiss the minister. Seven members (defendants here) voted to dismiss and twenty one members voted to retain the minister, which caused a division in the church. The seven members then declared themselves the church and voted to dismiss the twenty one members who are the plaintiffs in this case. Thereupon the twenty one members declared themselves the church and voted out the defendants. This dispute resulted in an injunction action, filed in the Circuit Court of Dallas County by plaintiffs, wherein they sought to remove defendants from the church as in the present action.

January 13, 1947, the court rendered the following decree:

"The Court, after hearing all the evidence offered, and at the conclusion of the trial of this cause, finds that on the 22nd day of

June, 1946, a controversy arose in the New Hope Primitive Baptist Church, being attended by members of that Church, and that under the law of the "State of Missouri the nineteen members, mentioned in evidence, were unlawfully removed, under the laws of the State of Missouri, from membership in the New Hope Primitive Baptist Church of Dallas County, Missouri; that on the 20th day of July, 1946, the removal of the seven members was unlawful, under the laws of the State of Missouri.

"The Court further finds that the members attempted to be removed on June 22, 1946, were in the majority, and, therefore, have a right to carry on their church activities on the fourth Saturday before the fourth Sunday, and the fourth Sunday, of each month, and at such other times as may be required for special meetings.

"The Court further finds that the seven members attempted to be removed have a right to worship and hold Church, or meetings, in the building at some regular time, and the Court designates the second Saturday before the second Sunday and the Second Sunday, of each month, that the seven may have Church, or meetings, in said building, at which time they, or any other persons may, under lawful conduct, attend.

"It is further ordered that the expenses of lights and fuel, or any other proper expenses for their meetings, or Church, be provided by the aforesaid seven members, the defendants herein, and that such expenses be paid over monthly to Joe Henson, who must properly account therefor.

"The Court further finds that Joe Henson shall have the right to carry the key, and should have custody of the building; however, upon request from Jim Payne, designated by the Defendants herein as their representative, the said Joe Henson is to give the key to the said party, who is charged with the responsibility of the Church during the time he has said key, and must deliver the same back to Joe Henson.

"The Court suggests that the membership of this Church meet within sixty or ninety days and, by a majority of the members of this Church, designate three Trustees for said Church."

It is noted from the evidence that there are two factions in the membership. One faction, plaintiffs herein, is called the "Henson faction", and the other faction, defendants herein, is called the "Payne faction."

The decree of the Circuit Court was not appealed from. The membership of both factions were declared members of the church and their attempted removal by each other was voided by this decree.

The evidence is that the Henson faction, at no time, ever attempted to remove defendants from the church after this court decree and, therefore, the trial court was justified in finding that all the parties in this lawsuit were members of the New Hope Primitive Baptist Church and that part of plaintiffs' petition which says that "these defendants are not members of the aforementioned church and have no rights, title or interest in or to any of the aforementioned property" is disproved by plaintiffs' exhibit numbered 1, which is the decree of the court relied upon by plaintiffs and pleaded in their petition.

We think the evidence on the part of plaintiffs fails to show by clear, cogent and convincing proof that the defendants, or any of them, have since the decree of the Circuit Court in 1946 ever attempted to interfere with plaintiffs' control of the church house and the church property. Joe E. Henson, leader of his faction, did testify that at one time one of the defendants ordered him off the premises but his testimony was insufficient to prove the allegations in the petition that the defendants have been harassing plaintiffs through the years and forcibly entering the church property in violation of the court's decree and against the wishes of plaintiffs.

Plaintiffs complain to the court that defendants failed to pay their part of the light bill but plaintiffs' testimony shows that defendants did pay to Joe E. Henson their part of the light bills until the said Henson refused to give them a receipt for such payments. It will be noted that the court's decree (relied upon by plaintiffs in their case), provides that the said Joe Henson must properly account for such payments. Plaintiffs must come into court with clean hands when they seek the strong arm of equity to enforce their rights. Joe Henson admits he refused to give them receipts and that his conduct caused the non-payment of the light bills. He also admits that the fuel, mentioned in plaintiffs' petition, could not be considered because each of the parties furnished their own wood.

Plaintiffs' testimony further complains that the defendants broke the locks on the church to get in and that while they were building on the adjoining lot they went into the church house, but, when asked if he saw anyone break the locks, he admitted he did not. Furthermore, the witness admitted he was not at home at all times; that he left the key hanging on the gate but did not inform defendants where it was, so, again, if defendants did not use the key it was due partly to the wrongdoing of plaintiffs. For more than nine years the evidence shows that these parties attended church without any trouble.

After the filing of the lawsuit and judgment of the Circuit Court in 1947, plaintiffs' testimony is that they elected Joe E. Henson, Larken Henson and Jessie Chapman as trustees. They admit that the defendants were not present at the church meeting and they also admit they would not have allowed defendants to vote or take part in the selection of the trustees had they been present. Joe Henson was the only witness to testify and he stated that they could have come to church but would have had no more power than any outsider. Plaintiffs' petition relies on the Circuit Court judgment rendered in 1947 as binding, yet, they admit they never complied with the court's suggestions in that decree that the membership of the church meet within sixty or ninety days and, by majority of such members, designate three trustees. It is clear that plaintiffs were bound by the judgment only when it met with their desire.

They offered in evidence plaintiffs' exhibit 2, the ledger or record book of the church and the constitution of the church adopted in 1876, which set out the beliefs of the church. This record contained rules of decorum. Under these rules it was provided:

"All matters of the Church shall be decided by a majority of the members present, except receiving and dismissing members, which shall be unanimous."

Joe E. Henson testified:

"Q. Now, after the break in the church, and after the suit was filed, did the church continue to have meetings at the same time the meetings had been held since the beginning of the church? A. Yes, sir.

"Q. At your regular church meeting on the fourth Saturday before the fourth Sunday in September of 1946, before that meeting did your church have any trustees remaining in it, before that meeting that I just mentioned? A. I don't think so."

The witness stated the trustees did not have any definite terms but just served until they passed away. He then testified that the present trustees were elected on the fourth Sunday in September and are still the trustees. He stated that after that in January, 1947, the court rendered its decree declaring their rights. He testified that he and his group followed that decree. He gave this testimony:

"Q. Have you ever varied at all from that Court decree? A. No, sir."

The testimony shows that the New Hope Primitive Baptist Church and some six other churches belong to an Association; that the acre of land (shown in plaintiffs'

exhibit 6) was purchased for associational purposes but paid for by the New Hope Primitive Baptist Church. The evidence shows that these defendants started to erect a small building on this lot to be used by members of the Association when meeting with New Hope Primitive Baptist Church. The foundation about 24' x 30' or 34', had been prepared. Mr. Henson testified that defendants had poured the concrete and built the foundation. He testified that the members of the church had not given their permission and complained to him, as trustee, of defendants' action. At the close of the testimony the defendants made a statement to the court that they would not proceed further with the building on the association lot. It was at that time that plaintiffs' attorney requested the court to determine whether or not Jessie Chapman, Larken Henson and Joe E. Henson were the duly elected trustees, and, under the law, had the right to control the property. To this request the court made the following statement:

"By the Court: Well, my idea is, gentlemen, that Judge Jackson passed on all these matters in 1947, except the matter of this new building. Now, the new building, the Defendants have stated they will not go ahead with it, and I am certainly not here to refute Judge Jackson's ruling. There was no appeal taken from that, and, in his ruling at that time, he had before him everything that is in evidence here except the matter of this proposed building, and in view of Defendants' amendment of that project, the case will be dismissed."

There is no dispute that injunction is a proper remedy to settle rights of two discordant factions of a church congregation in respect to use and control of church property. Trett v. Lambeth, Mo.App., 195 S.W.2d 524, 531; Clevenger v. McAfee, 237 Mo.App. 1077, 170 S.W.2d 424; Fulbright v. Higginbotham, 133 Mo. 668, 34 S.W. 875; Briscoe v. Williams, Mo.App., 192 S.W.2d 643; State ex rel. and to Use of Northside Church of God v. Church of God, Mo.App., 247 S.W.2d 542.

Controversies over theological questions are within the exclusive jurisdiction of ecclesiastical courts and civil courts are not concerned therewith. Stone v. Bogue, 238 Mo.App. 392, 181 S.W.2d 187; Olear v. Haniak, 235 Mo.App. 249, 131 S.W.2d 375; Trett v. Lambeth, supra; State ex rel. and to Use of Northside Church of God v. Church of God, supra.

Our courts have held that where two opposing factions of a religious association occur, property acquired by the association before the division arose will be the property of that faction which abides by the doctrines, faith and rules of church government which the united body professed when the property was acquired. Boyles v. Roberts, 222 Mo. 613, 121 S.W. 805; 45 Am. Jur. p. 777, Sec. 67.

This court is not bound by the findings of the chancellor in an equity case but must review the evidence and determine the correctness of the chancellor's rulings. It is a generally recognized rule, however, that the chancellor who tries a case occupies a vantage ground of a superior nature in passing on the testimony of witnesses who appear before him and the court of appeals will give due deference to the finding of the chancellor on controverted questions of fact. Stibal v. Nation, Mo.Sup., 98 S.W.2d 724; Pacific Movement of the Eastern World v. Wright, Mo.App., 117 S.W.2d 647; Trett v. Lambeth, supra.

It is the purpose of an injunction to restrain actual or threatened acts which constitute a real injury and is to be used sparingly in clear cases only, and the decree should be so framed as to afford the relief to which complainant is entitled, and not to interfere with legitimate and proper action on part of those against whom it is directed. Murr v. Maxwell, Mo.App., 232 S.W.2d 219.

An injunction is not a writ of right but an appeal to the conscience of chancery

and to the chancellor's sound discretion. Murr v. Maxwell, supra.

■ The decree must conform not only to the evidence but to the pleadings. Sinclair Refining Co. v. Wyatt, 347 Mo. 862, 149 S.W.2d 353.

■ Under the above cited authority we find that the trial court was justified, under the pleadings in the case, in holding that the rights of the parties had been adjudicated by the decree of the Circuit Court of Dallas County, relied upon in plaintiffs' petition, as to all matters except as to the lot designated as the "association lot" where defendants attempted to erect a building for the use of the Association. Upon objection to the erection of this building by plaintiffs, defendants immediately made a statement to the court that they would proceed no further with such erection without permission from plaintiffs. Nowhere in the evidence were plaintiffs' rights to control the use of the church property denied and the evidence showed that defendants made no claim to the title to this property or to the control thereof. And certainly the evidence does not show irreparable damage. The only witness, Mr. Henson, who testified for plaintiffs, admitted that the property was purchased for associational purposes. He testified that when he saw defendants building the foundation of the building to be erected, he asked them about what they were doing, yet, he, nowhere, testified that he ever demanded that they refrain from such action.

■ As to who are members of the church is purely an ecclesiastical matter with which this court has no concern. However, that matter was passed upon by the lower court in the judgment pleaded and no appeal was taken from it.

■ It is well settled law that the majority of the members of a church have the legal right to control the use of the property. There is nothing in the evidence here to indicate that defendants ever attempted to prevent the majority of the church members from such control.

Following the law as herein set out, we find that the judgment of the trial court was supported by the evidence and it is the judgment of this court that the trial court's judgment be and it is affirmed.

RUARK, J., concurs.

STONE, J., concurs in result.