Victoria **ADAMICK** et al., Plaintiffs-Appellants,

v.

**FERGUSON–FLORISSANT SCHOOL DISTRICT** et al., Defendants-Respondents.

No. 34286.

Missouri Court of Appeals, St. Louis District, Division One.

June 20, 1972.

Motion for Rehearing or for Transfer to Supreme Court Denied July 25, 1972.

Application to Transfer Denied Sept. 11, 1972.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown by Donald L. James and William L. Davis, St. Louis, for plaintiffs-appellants.

Flynn & Parker, St. Louis, for defendants-respondents.

CLEMENS, Judge.

Suit for injunction by plaintiff-teachers against the defendant school district. Each plaintiff had contracted to teach during the 1970–71 school year and the district had published a calendar specifying the days school was to be in session. The critical issue is whether the calendar is part of the teachers' contract and thus not subject to change without the teachers' consent.

For financial reasons school did not start as scheduled and the district issued a revised calendar by which there were several changes in days of school attendance. April 8 and June 10 were changed from "non-attendance" to "attendance" and June 11 was changed from "non-attendance" to "work."

On April 5, 1971 the teachers sued to enjoin the district from holding classes on

the three dates. Upon the teachers giving a $5,000 bond in compliance with § 526.070 [1] the court granted a temporary restraining order which kept the district from holding classes on April 8. On May 24, however, the court dismissed the teachers' petition on the ground it failed to state a claim on which relief could be granted. This denied injunctive relief as to the June 10 and 11 school days and the teachers have appealed as allowed by § 512.020.

■ We first consider the preliminary question of mootness. Since the school days in question have passed, no effective injunctive relief can be granted. But there is still a live issue. As said, the teachers have posted a $5,000 bond and their liability thereon depends on whether their petition was properly dismissed. So the case is not moot and we will decide the issue on its merits. Compare American Pamcor, Inc. v. Klote, Mo.App., 438 S.W. 2d 287 [8–10].

In compliance with § 168.106 the district and each teacher had executed an "Indefinite Contract," the pertinent parts being: "District hereby employs Teacher to teach such number of days as the Board of Education establishes in the public schools of the District for the school year commencing August 31, 1970, at the gross annual salary of _____Dollars ($) _____, to be paid in twelve equal installments, less legal contributions and deductions, beginning with the month of September, 1970. . . . This contract shall continue in force from year to year until modified or terminated in accordance with the provisions of the Teacher Tenure Act as amended to date (R.S.Mo. Sec. 168.101–168.116 enacted in 1969). The provisions of that Act are incorporated herein and made a part hereof."

The district sent these contract forms to the teachers on July 3, 1970 with a letter of transmittal stating:

"It is a pleasure to offer you a contract to teach in this district during the 1970–71 school year. The salary amount is based on the salary schedule recently approved by the Board of Education after negotiations with the Community Teachers Association. Since the district has not yet established its tax rate for 1970–71, this offer is contingent upon voter approval of a tax rate sufficient to finance next year's school program. . . . Enclosed are: (1) contract forms, (2) salary schedule, (3) salary schedule regulations, (4) school calendar, (5) 'Teacher's Health Certificate' form, and (6) chest x-ray memorandum. State law requires that each teacher undergo an annual physical examination, including a chest x-ray. Please complete the requirement and return the signed health certificate to this office prior to September 2. The chest x-ray may be obtained free of charge from one of the county health offices and reported separately by card."

As said, the teachers contend the original school calendar is an integral part of their contract which the district could not change unilaterally. Conversely, the district contends the contract itself is the complete agreement, that the original calendar was merely the announcement of the district's school attendance plan, and changing it by the revised calendar was but a matter of discretionary management.

■ The general law of contracts applies in the construction of teachers' contracts. Lynch v. Webb City School District No. 92, Mo.App., 418 S.W.2d 608 [2]. Under certain circumstances several documents may be read as a single contract. However, each case the teachers cite involved an actual reference on the face of the contract to a set of rules or an explanatory document which is thereby made a part of the contract. There is no such reference here. Therefore, the cases cited by the teachers are not persuasive.

1. All section numbers refer to RSMo 1969, V.A.M.S., as amended.

The intention of the parties must govern the interpretation and construction of a contract. Lowery v. Fuller, 221 Mo.App. 495, 281 S.W. 968 [1]. [A contract] "should be interpreted and read in the light of the circumstances of the parties at the time." Fisher v. Fisher, 203 Mo.App. 45, 217 S.W. 845. The contract was mailed at a time when all parties knew there was a substantial possibility the district's voters would not pass a new tax rate and some sort of schedule disruption was likely; the letter of transmittal mentioned the financial crisis. It cannot reasonably be presumed that the school board —well aware of its precarious financial situation—intended to lock itself into a rigid attendance schedule fixed by contract.

Moreover, the contract itself states that the teacher is hired to teach "such number of days as the board of education establishes." If the parties intended to fix the work schedule by contract, this clause is meaningless; the quoted language contemplates unilateral action on the part of the board. We cannot ignore this express language and say the parties intended it to be of no effect.

Having concluded the calendar did not become a part of the contract, we still will consider the school board's authority to change the calendar unilaterally. Two statutes are pertinent. Section 171.011 provides: "The school board of each district in the state may make all needful rules and regulations for the organization, grading and government of the school district. The rules shall take effect when a copy of the rules, duly signed by the order of the board, is deposited with the district clerk. The district clerk shall transmit forthwith a copy of the rules to the teachers employed in the schools." It has been held repeatedly that school statutes must be construed broadly to accomplish their worthy aim. ". . . school laws will be construed liberally to aid in effectuating their beneficent purpose, and that, since the administration of school matters usually rests in the hands of plain, honest, and well meaning citizens, not learned in the law, substantial rather than technical compliance with statutory provisions and requirements will suffice." State ex rel. Reorganized School District of Newton County v. Robinson, Mo.App., 276 S.W.2d 235; see also England v. Eckley, Mo., 330 S.W. 2d 738 [11], and State ex rel. Kugler v. Tillatson, Mo., 312 S.W.2d 753 [8].

Section 171.031 empowers the school board to draw up the school calendar unilaterally.[2] Such authority is essential for the board to carry out its managerial function. We cannot hold that the legislature which gave the school board unilateral discretion to set up the calendar in the first place intended to deprive it of this very flexibility after the school year had begun.

Moreover, the calendar statute must be read along with the broad regulatory power of § 171.011. This has been held to give the school board broad discretion in the management and regulation of school affairs. Magenheim v. Board of Education of School District of Riverview Gardens, Mo.App., 347 S.W.2d 409, dealt with a predecessor section to § 171.011, which contained similar language. In holding school boards are empowered to require teachers to join professional organizations, the court said at 1. c. 417: "The Legislature of this state has delegated to school boards the power to exercise their judgment and discretion in matters affecting school management, including the employment of teachers, and a court may not interfere unless the board exercises such power in an unreasonable, arbitrary,

2. "Each school board shall prepare annually a calendar for the school term, specifying the opening date and providing a minimum term of at least nine months or 174 days . . . ."

capricious or unlawful manner." See also State ex rel. Wood et al. v. Board of Education of City of St. Louis et al., 357 Mo. 147, 206 S.W.2d 566 [1].

■ The teachers point to the fact that the revised calendar was not signed by order of the board or deposited with the district clerk as required by § 171.011. As said in *Robinson,* "substantial rather than technical compliance with statutory provisions and requirements will suffice" in school matters. See also *Lynch* 408 S.W. 2d at l. c. 614. Here, although the technical requirements for issuing rules and regulations were not met, the teachers had ample and actual notice. They cannot claim to have been harmed by the district's failure to deposit the calendar modification with the district clerk. We hold there was "substantial and sufficient compliance" with the statutory requirements and that the board's regulations were valid.

Necessity and common sense confirm our conclusions. There are contingencies beyond the control of school boards, many of which are not uncommon, which disrupt school schedules. Winter weather often does; epidemics require school closings; school houses are damaged by fire; voters disapprove school tax levies. We do not believe the legislature intended to deny school boards the regulatory power to reorganize schedules to meet such exigencies. We cannot give our school statutes such a narrow reading or hamper the "plain, honest and well meaning citizens" whose duty it is to provide an education for children.

■ Finally, a court of equity will grant injunctive relief only where rights are clearly established. Putnam v. Coates, 220 Mo.App. 218, 283 S.W. 717 [5], l. c. 719; Clevenger v. McAfee, 237 Mo.App. 1077, 170 S.W.2d 424 [1]. The teachers have not clearly established their right to relief.

The judgment is affirmed.

BRADY, C. J., and WEIER, J., concur.