Joseph H. SCHWARTZ, (Plaintiff) Appellant,

v.

Rabbi Yaakov M. JACOBS, Rabbi M. H. Eichenstein, Rabbi Charles Hartman, Rabbinate Beth-Din, and the Vaad Hoeir, (Defendants) Respondents.

No. 30832.

St. Louis Court of Appeals.

Missouri.

Dec. 19, 1961.

Morton L. Schwartz, St. Louis, for appellant.

No appearance for respondents.

RUDDY, Judge.

This is an appeal by plaintiff from an order and judgment dismissing his amended petition with prejudice.

The first pleading filed by plaintiff was a "Petition for Mandamus" wherein plaintiff asked the court to issue its alternative writ of mandamus directing defendants "to decide said cause without further delay or show cause why said alternative writ should not become absolute." This petition was filed September 8, 1959. The alternative writ of mandamus was not issued by the trial court and nothing further was done after the filing of the petition by either the trial court or plaintiff until November 22, 1960. On that date plaintiff presented to the trial court a "Memorandum" requesting that service of process be issued directed to the Sheriff of the City of St. Louis and "that an order to show cause be issued against all the Defendants to be returnable on a date to be set by this Court." The record before us shows that this memorandum was presented to the court and said memorandum was "refused by the Court to be made a part of the official court records of the cause."

Thereafter, plaintiff abandoned his "Petition for Mandamus" and filed with and presented to the court his "Amended Petition for Mandatory Injunction" which reads as follows:

"1. Comes now the plaintiff and states to the Court that he has a claim and grievance against the named Defendants, predicated on their failure to complete and render a decision on an ecclesiastic dispute and grievance against another party, namely, Dovid ben Schloima (and Kaila), properly brought before their jurisdiction, accepted by them for Judicial action, partially tried, and now pending before them—the case never having been completed nor concluded by them. Plaintiff is a resident of St. Louis County, Missouri.

"2. The Defendant, the Vaad-Hoeir of St. Louis (by pro-forma decree No. 3138, 9/15/1925, St. Louis Circuit Court), is properly sanctioned to try such cases based on Jewish Biblical and Talmudic Law by reason of their publically proclaimed announcement (October 26, 1958) verifying to the installation of a Jewish Court of Justice, namely, the Rabbinate Beth Din, comprising a panel of 4 Defendant Rabbis; and as published in the official bulletin of the Vaad-Hoeir, excerpted as follows: 'The Vaad-Hoeir provides—Rabbinical Court of Jewish Law gov-

erning—, and all other matters of Jewish Jurisprudence—In this area.'

"3. That both litigants in the moral dispute agreed to, and did submit the Plaintiff's grievance to Chief Rabbi Eichenstein for arbitration by the Defendant Beth-Din Court; and both litigants therein appeared together at several sessions (July-Sept., 1957), before Chief Eichenstein, who heard the complaints, but failed to render any decision.

"4. That based on its properly recognized 'moral' merits, the complaint, Joseph H. Schwartz vs. Dovid ben Schloima (and Kaila) was properly presented (December 1958) before Associate Rabbi Charles Hartman, Defendant herein, who accepted the case for arbitration by, and in behalf of the Rabbinate Beth-Din, and personally acknowledged it for Rabbinical trial and justice.

"5. That the named defendants, acting in behalf of themselves and in behalf of the Rabbinate Beth-Din, have taken the case under submission some 24 months ago, and have after repeated demands, both oral and in writing, failed and refused to conclude said matter, in any manner or means whatsoever.

"6. That the plaintiff has been irreparably injured by this long delay, especially in enforcing his rights elsewhere, and the plaintiff has no adequate remedy at law, except through Ecclesiastic channels; namely, the Rabbinate Beth-Din.

"7. That this action is brought pursuant to Chapter 435 of the R.S.Mo. 1949.

"Wherefore, plaintiff prays for an order to show cause why the defendants should not be mandatorily enjoined to conclude the arbitration of this claim, and upon the return of the order to show cause and a hearing held pursuant thereto, that the defendants be permanently mandatorily enjoined to compel said defendants to dispose and conclude said arbitration, within a reasonable time to be set by this Court, and for such further and other orders as to this Court seems meet and proper."

On December 12, 1960, the trial court entered the following judgment:

"Plaintiff's Amended Petition for Mandatory Injunction having been presented to the Court, and the Court having studied the same and being advised of its allegations, plaintiff's request that an Order to show cause be issued for the defendants herein to appear and show cause why they should not be mandatorily enjoined as prayed in plaintiff's amended petition, be and the same is hereby denied by the Court on the grounds that this is an ecclesiastical matter solely within the jurisdiction of the Jewish Biblical and Talmudic Law and that this Court has no jurisdiction to entertain this cause of action.

"Wherefore, it is ordered, adjudged and decreed by the Court that the Amended Petition of said plaintiff be and the same is hereby dismissed with prejudice, the mandatory injunction denied, and that plaintiff pay the costs herein incurred."

■ Before discussing the sufficiency of plaintiff's amended petition to give the trial court jurisdiction, we should point out that we do not agree with plaintiff that the matters pleaded in his amended petition bring him within the provisions of Chapter 435 RSMo 1949, 22 V.A.M.S., governing Arbitrations. Section 435.020 of said Chapter 435 provides that persons "by instrument of writing" may submit to the decision of one or more arbitrators any controversy which may be existing between them "which might be the subject of an action * * *." The amended petition does not show the execution of a written instrument agreeing to the submission of the dispute to the defendants as arbitrators, nor does it show, as

we shall demonstrate, that the controversy might be the subject of an action over which the civil courts have jurisdiction. Continental Bank Supply Co. v. International Broth. of Bookbinders etc., 239 Mo. App. 1247, 201 S.W.2d 531. Plaintiff does not plead facts showing statutory arbitration and because of the result we have reached, we need not determine if the parties intended a common law arbitration. Thatcher Implement and Mercantile Co. v. Brubaker, 193 Mo.App. 627, 187 S.W. 117.

The crucial question in this appeal is whether plaintiff has stated a cause of action over which the Circuit Court would have jurisdiction or has plaintiff pleaded an ecclesiastical matter over which a civil court would have no jurisdiction.

The well established rule applicable to the instant case, found in many cases in this state, is well stated in 45 Am.Jur., Religious Societies, § 40, pp. 748, 749, as follows:

> "All questions relating to the faith and practice of the church and of its members belong to the church judicatories, to which the members have voluntarily subjected themselves, since, when a person becomes a member of a church, he becomes so upon the condition of submission to its ecclesiastical jurisdiction, and however much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court so long as none of his civil rights are invaded."

We said in Briscoe v. Williams, Mo.App., 192 S.W.2d 643, loc. cit. 646:

> " * * * there can be no doubt that the generally accepted rule is that civil courts have no ecclesiastical jurisdiction and ordinarily cannot question acts of church discipline. * * * It is the generally accepted rule that ecclesiastical questions belong to the ecclesiastical tribunals, and their decisions thereon are binding, conclusive, and not reviewable by the civil courts, * * *."

To the same effect, see Trett v. Lambeth, Mo.App., 195 S.W.2d 524, loc. cit. 531.

The courts are without jurisdiction to intervene in ecclesiastical matters, except to protect the civil rights of a member of a church or to adjudicate property rights. 45 Am.Jur., Religious Societies, § 40, p. 740; Murr v. Maxwell, Mo.App., 232 S.W. 2d 219, 234; Stone v. Bogue, 238 Mo.App. 392, 181 S.W.2d 187. And if the use and control of church property is involved, injunction is the proper remedy to settle the rights of the disputants. Trett v. Lambeth, supra.

It takes little discernment on our part to see that plaintiff's "Amended Petition for Mandatory Injunction" does not involve the use and control of church property, nor does it plead any facts that show a civil right of plaintiff is being transgressed. To the contrary, plaintiff's amended petition for mandatory injunction distinctly alleges that "an ecclesiastical dispute and grievance against another party, namely, Dovid ben Schloima (and Kaila)" is the matter involved. No facts are pleaded that would indicate the nature of the dispute and grievance that plaintiff has against the named parties and which he claims they have submitted to the defendants for arbitration. In several places in his amended petition plaintiff describes the grievance as a "moral" dispute and that this dispute is to be tried by the defendants sitting as a Jewish Court of Justice and their decision is to be based on Jewish Biblical and Talmudic Law.

There is nothing in plaintiff's petition that shows that any civil right of plaintiff is involved. It clearly shows, as the trial court found, an ecclesiastical matter solely within the jurisdiction of the defendants acting as a Jewish Court of Justice. As we have pointed out in the authorities cited, the civil courts have no jurisdiction in ecclesiastical matters and are without jurisdiction to intervene in such matters.

Plaintiff argues that the defendants should have been served with process be-

fore the court ruled as it did and that the lack of jurisdiction in the trial court should have awaited an attack to that effect in the return of the defendants to the process served.

 The type of process or notice will depend upon the particular type of action involved. The immediate process sought by plaintiff in his amended petition was an order on defendants to show cause why a mandatory injunction should not be issued. Process may be in the form of an order to show cause. Service of process is not required for the protection of the plaintiff. 42 Am.Jur., Process, § 3, p. 7. Its purpose is to give the court jurisdiction over the person of a defendant.

A mandatory injunction is a rather harsh remedial process and is not favored by the Courts. However, in a proper case a court of equity will award mandatory relief, including preliminary relief. 28 Am. Jur., Injunctions, § 17, p. 506-7.

A preliminary mandatory injunction will issue where a proper showing is made. Obviously, the merits of plaintiff's cause of action as gleaned from the petition will determine plaintiff's right to preliminary process and an order to show cause. To justify the issuance of preliminary process for a mandatory injunction, it must be clear that plaintiff would have a right to a final decree for a permanent mandatory injunction. It needs no citation of authority that no process for injunctive relief can issue if the petition of plaintiff does not state sufficient grounds for such relief. In the case of the ordinary injunction, wherein it is sought to prohibit the doing of some act, a temporary injunction restraining such act will not issue if it appears from the petition that plaintiff is not entitled to the relief demanded. Sec. 526.050 RSMo 1959, V.A.M.S.

It would have been a futile and unnecessary act for the trial court to have ordered process directed to the defendants in the instant case. This, because, as we have shown, the trial court had no jurisdiction of the matter alleged in the petition of plaintiff. We find no error in the trial court's action. Its order and judgment is affirmed.

ANDERSON, P. J., concurs.

WOLFE, J., not sitting.