**John W. WILLIAMS et al., Individually and as officers and/or members of the Morning Star Baptist Church, an unincorporated religious association, Plaintiffs-Respondents,**

v.

**Jasper A. WILDER et al., Defendants-Appellants.**

**No. 24227.**

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1965.

James Wilson Spencer, Kansas City, for appellants.

Harold L. Holliday and Lewis W. Clymer, Kansas City, for respondents.

SAMUEL A. DEW, Special Commissioner.

The respondent, John W. Williams, and others named in the petition as plaintiffs, in behalf of themselves and all other members and officers of the Morning Star Baptist Church in Kansas City, Missouri brought this action. They sought to enjoin defendant (appellant) Jasper A. Wilder, because of alleged termination of his pastorate, from any further participation in the services, meetings or business of said Church or from interfering with the use or disposition of its property, cash or assets. From a judgment in favor of the plaintiffs, the defendants have brought this appeal. Others who intervened as co-defendants have joined in the appeal.

Plaintiffs filed a motion to dismiss this appeal for reasons of certain imperfections of defendants' brief. The motion was taken with the case. We have noted the matter specified and find them insufficient to warrant dismissal of the appeal. The motion is overruled.

Some time prior to June 12, 1964, defendant Wilder became the duly elected pastor of the Morning Star Baptist Church (hereinafter referred to as the Church), for an indefinite period. It was and is an unincorporated religious association. It has a congregational or independent form of government with no episcopacy in higher control.

The petition in this cause alleged, among other things, that the Church owned real estate, transacted its business, solicited financial aid from its members and operated as a religious association; that its custom was to call and relieve its pastors by a vote of a majority of its members present at a regular meeting or a special meeting called for that purpose. It was further alleged that on or about June 12, 1964, at a special meeting called in accordance with established custom and usage of the Church, it was lawfully determined by a majority of the members present, that the pulpit of the Church be deemed vacant and that the pastor be released.

It was further averred that notwithstanding such action of the Church, the defendant Wilder, on June 14, 1964, wrongfully undertook to and did conduct the services in said Church, and declared that he would continue to act as its pastor, conduct its worship services and to transact such business of the Church with regard to its property as he determined. The petition alleged that the members of the Church would thus be deprived of their right to conduct the business of the Church and its property, and that the Church would sustain injury to its reputation, credit and spiritual influence. The prayer was for an order restraining defendant Wilder from convening, conducting or participating in any meeting or services of the Church or in the use or disposition of the property, cash or assets; that he be ordered to show cause why a temporary injunction to the same effect should not be issued, and that upon a final hearing, said injunction be made permanent.

On June 26, 1964, an order to show cause on July 8, 1964, as prayed, was issued and a bond of $250 was required of the plaintiffs. On July 8, 1964, defendant Wilder filed a motion to dissolve the temporary restraining order on the grounds that the matters involved were ecclesiastical; that the court was without jurisdiction and that he was the duly qualified pastor of the Church. Thereafter, on the same date, eight certain persons claiming as members and officers of said Church, filed a motion to be made "parties defendant", stating that no final action in the cause could be made without officers and members of the Church participating. The court thereupon ordered that the applicants be entered as "defendants" and that its temporary restraining order continue in full force and effect.

Thereafter, on the same date, July 8, 1964, pursuant to the suggestion of the court, the following stipulation was filed in the cause and was signed by two counsel representing plaintiffs and by one attorney, later shown as then counsel for defendant Wilder:

"The plaintiffs and defendant by and through their respective attorneys stipulate and agree that the cause be continued generally; that in the interim it is agreed that another general business meeting of the Morning Star Baptist Church will be held on Friday, July 24, 1964, at 8:00 p. m., for the purpose of determining if the pulpit will be declared vacant, and if declared vacant, upon what terms and conditions; that the meeting of July 24, 1964, will be moderated by the Rev. W. H. White, Pastor, Immanuel Baptist Church, Kansas City, Missouri; that this meeting and its purpose will be announced from the pulpit of the Morning Star Baptist Church on Sunday, July 12, 1964, and on Sunday, July 19, 1964, and that the Rev. W. H. White is authorized to use any other means that he considers necessary and proper to notify the members of the meeting; that the Rev. J. A. Wilder will be paid $100 per week through the date of the meeting; that if the pulpit be declared vacant, the amounts paid to Rev. Wilder between June 12, 1964 and July 24, 1964, will be deducted from any severance pay given him.

(Signed) Lewis W. Clymer
(Signed) Harold L. Holliday
(Signed) W. Franklyn Clark."

The record shows no exception then made to the above stipulation by the additional "defendants" above named, either in person or by their separate counsel James Wilson Spencer.

On September 23, 1964, the plaintiffs filed a motion to make permanent the injunction against defendant Wilder, as prayed, setting out facts purporting to show full compliance with the terms of the stipulation, reciting the reaffirmation of the vacation of the pastorate by the overwhelming majority of the members present, and defendant Wilder's continued refusal to abide thereby or to surrender possession of the Church parsonage.

On September 28, 1964, the additional "defendants" above mentioned jointly filed a motion in the nature of an interplea, to dismiss all formal pleadings of the plaintiffs to deny the plaintiffs all injunctive relief and to enjoin the plaintiffs from interfering with the restoration of the defendant Wilder to the Church pulpit. The motion challenged the jurisdiction of the court on the ground of invalidity of the disposition of the Church pastorate.

On the same date, September 28, 1964, the trial began and the appearances were shown to be two attorneys for the plaintiffs and "Messrs. James Wilson Spencer and W. Franklyn Clark appearing for 'defendant' ". (Italics supplied).

Upon the hearing on the merits of the case an expert of 68 years as pastor and arbitrator in the Negro Baptist Church, whose impartiality was acknowledged, was produced by the plaintiffs. He testified that in the absence of a written agreement with the pastor of the Church, a majority vote of its voting members is sufficient to dismiss a pastor, because of its independent form of government; that in 99 percent of Negro Baptist churches elections on the pastorate are not held annually nor for a definite term; that the deacons of the Church first undertake to change the attitude of a pastor complained of; that if such move is not successful, the deacons recommend his dismissal to the Church with their reasons therefor. He said that if the matter is referred to a council to hear, the decision may be ignored by the Church and its decision would still stand.

At this point the plaintiffs dismissed as to the codefendants but, upon objection, the court retained them in the case as "interveners."

Plaintiffs introduced the minutes of the Church meeting on July 24, 1964, provided for in the stipulation hereinabove quoted. The minutes referred to the meeting as a "called" meeting and recited that the meeting grew out of a court hearing on July 8, 1964, in which attorneys for both plaintiffs and defendant were in agreement that the matter in controversy should and could be settled out of court, with the proper proceeding and proper notice. The minutes recited that after proper notice the meeting was opened at 8:25 p. m.; called to order by the chairman of the Board of Deacons; that hymns were sung and a prayer service had, and Rev. W. H. White then took over the meeting as the "court appointed moderator"; that he stated the purpose of the meeting and permitted questions of any who did not understand the nature of the issue at hand. The minutes also stated that the moderator then qualified the members for voting and entertained a motion on the issue of the vacation of the pulpit; that a motion was made by John W. Williams that the pulpit would remain vacant as of June 12, 1964, as so voted by the membership; that the motion was carried by a standing vote of 162 to 67. Another motion was shown to the effect that the defendant Wilder receive 60 days' severance fee, which motion was carried 159 to 66.

There was testimony that at the meeting of July 24, 1964, Rev. White asked all members to stand and that all stood. Out of a membership of 500 or 600, 229 were present at the meeting. The minutes of a previous meeting of January 17, 1964, were read in evidence, recording the report of the deacons when defendant Wilder was employed as pastor, which described the terms of the employment, namely, that the Church agreed to pay the utilities at the parsonage; that the Rev. Wilder was to be paid a salary of $400 per month; that the Church was to advance him one week's salary and pay him one week at a time; that the Church was to pay $45 per week rental for a parsonage until the Church

parsonage was ready for occupancy. The minutes of the meeting of July 24, 1964, also stated that it had been announced in the newspaper "The Call", by radio, by the Church bulletin, and personally by Rev. White. Payments to Rev. Wilder were shown paid as agreed, except $100 was withheld until he surrendered the parsonage and which the Church was prepared to pay.

In behalf of defendant Wilder and the intervening parties, the printed rules and regulations of the Church were introduced without objection. Rule 2 was read as follows: "Discipline cases shall be disposed of as outlined in Hiscox's Standard Manual for Baptist churches, since this book is recognized by civil courts as well as accepted by the National Baptist Convention, U.S.A."

A book entitled "Hiscox's New Directory for Baptist Churches" was introduced, and from its text certain rules were read as to procedure in the trial of discipline cases, requiring opportunity to persons tried by the Church as to time and place to vindicate themselves; their right to copies of the charges made, names of accusers, confrontation, copies of records of the proceedings and designation of who may partcipate in the hearings. The testimony was that such rules were in effect when defendant Wilder was made pastor of the Church. The trial court, however, stated that he had heard no charge of misconduct or wrongdoing against defendant Wilder, and that the only issue was whether at a meeting of the Church membership the Church pulpit had been declared vacant. The court withheld ruling on an objection that the text of the book as read did not apply to ministers, but to members on trial.

There was testimony that on June 7, 1964, the chairman of the Board of Deacons inquired of Rev. Wilder if communion would be served that day, to which the pastor replied that he knew no reason why it should not be, to which the chairman answered that he would not serve it; that

the pastor then stated that because of the chairman's conduct he would have to be disciplined and that for thirty days another deacon would be appointed to serve communion and to take charge of the Board of Deacons. A witness testified that one deacon announced at the Church service that there would be a meeting of the Board of Deacons the following Monday night, and a called business meeting Friday night. Rev. Wilder inquired if such announcements had been made upon notice to him or with his consent, and stated that to his knowledge there would be no such meeting. There was, however, a meeting on Friday night, called by defendant Wade. No non-members of the Church were present except two counsel for the defendants.

It was in evidence that at the meeting of July 24, 1964, there were no charges filed or presented against defendant Wilder. The court stated that the meeting of that date had been called by the Court and that the legality of the call could not be questioned; that the stipulation was binding on all the parties.

The defendant Wilder testified that at the time he was invited to become pastor of the Church, the matter of salary was discussed by correspondence, including the temporary occupancy of living quarters until the completion of the Church's own parsonage, which matter he had left to the Church for determination. He said he had lived temporarily at the home of a relative at the expense of the Church until the old parsonage was sold and a new one purchased. He said he was later informed that he would have to provide his own furnishings since the Church was unable to do so. He said plaintiff Williams advised him to supply his own furnishings, although he had disposed of his furnishings used in his previous home at Texarkana, Texas; that he had spent $2,295 on the new furnishings. His employment began March 8, 1964. He was paid $100 for the week prior to his induction as pastor; thereafter he was paid $200 on the first and 15th of each month.

Rev. Wilder further testified that he began to notice some discontent and inquired of plaintiff Williams what was the cause of it and invited Williams to suggest a remedy for any displeasure existing, but was unable to ascertain any grounds for complaint. He stated that he had not received any salary from the Church since July 15, 1964; that he was still living in the Church parsonage. One witness said the Church never had agreed to supply the furnishings for the parsonage for defendant Wilder.

Having taken the case under advisement and having considered the suggestions filed by the parties, the court found the issues in favor of the plaintiffs. It found that the Church, an unincorporated religious association, by a majority of its members present at a regularly called meeting of its members or officers, declared the pulpit of the Church to be vacant and thereby released and discharged defendant Wilder as pastor thereof; that thereupon this suit was filed wherein the parties by their attorneys entered into and filed a stipulation agreeing to a further general business meeting of its members, officers and deacons to be held on July 24, 1964, at 8:00 p. m. for the purpose of again determining whether or not the pulpit be declared vacant; that due notices of the meeting were given as required by the stipulation and the majority again determined the pulpit vacant and released and discharged the said pastor as such. It was further found that notwithstanding such final vote, the defendant Wilder had continued to conduct and to participate in the meetings of the Church as its pastor and had occupied the parsonage belonging to it in Kansas City, Missouri. It was therefore decreed that the plaintiffs have judgment against defendants; that defendant Jasper Wilder be and thereby was permanently enjoined from convening, conducting or in any way participating in any meeting or services of the Church, or in any way interfering with the conduct of the business and government of the Church,

and from using or disposing of the property, cash or assets thereof, and from occupying the parsonage or residence owned by the Church. A motion of the defendants to set aside the judgment or for a new trial was overruled and this appeal was perfected.

■ Defendants' first point on appeal is that this court, reviewing a case in equity, may render its own judgment. This authority is well established. Jackson v. Tibbling, Mo., 310 S.W.2d 909, 914.

■ Point II, raised on appeal, is that the trial court had no jurisdiction of this cause because the action is one of an ecclesiastical nature. If that contention be correct, then, of course, the judgment is void and all other points here raised may be disregarded. In conformity with the doctrine of separation of Church and State, civil courts will ordinarily decline to extend their jurisdiction to matters strictly ecclesiastical. They are not concerned with disputes of a purely theological character and the determination of such matters by the proper church tribunals in an authorized manner is binding and conclusive. Henson v. Payne, Mo.App., 302 S.W.2d 44. If, in a given instance, the civil court does not have jurisdiction over the subject matter of the controversy in a religious association, such jurisdiction may not be vested in a civil court by mere stipulation or other form of agreement or estoppel. United Cemeteries Co. v. Strother, 342 Mo. 1155, 119 S.W.2d 762; Briscoe v. Williams, Mo. App., 192 S.W.2d 643, 646. If the controversy, however, involves protection of civil or property rights, even though arising out of a religious dispute, the civil courts will exercise their jurisdiction to protect such rights.

■ It has been said with good authority that: "While the civil courts have no jurisdiction over, and no concern with, purely ecclesiastical questions and controversies, they do have jurisdiction as to civil, contract, and property rights even though

such rights are involved in, or arise from, a church controversy. Civil courts have no jurisdiction over a church or its members, as such, or over its officers or tribunals, except where temporal rights are involved, and will not interfere in the internal affairs of religious organizations except for the protection of civil or property rights; but the civil and property rights of religious societies may be the subject of litigation in a civil court, and the courts have jurisdiction to determine controverted claims to the title, use or possession of church property." 76 C.J.S. Religious Societies § 86, pp. 873, 876. See also Schwartz v. Jacobs et al., Mo.App., 352 S.W.2d 389, 392; Boyles v. Roberts, 222 Mo. 613, 121 S.W. 805; Murr v. Maxwell, Mo.App., 232 S.W.2d 219, 234; 45 Am.Jur. 749. When property rights are involved, injunction is the proper remedy for settlement of the controversy. Schwartz v. Jacobs, supra; Clevenger v. McAfee, 237 Mo.App. 1077, 170 S.W.2d 424, 427; Fulbright et al. v. Higginbotham, 133 Mo. 668, 34 S.W. 875; Henson v. Payne, supra; State ex rel. and to Use of Northside Church of God et al. v. Church of God et al., Mo.App., 247 S.W. 2d 542, 546.

In the instant case the petition for the injunction pleaded, among other allegations, that the defendant Wilder, notwithstanding his alleged dismissal, declared his intent to "continue to take such action and to transact such business with regard to the business and property of said Church as he determines", and the prayer seeks to enjoin him "from interfering with the conduct of the business and government of said Church or in the use and disposition of the property, cash or other assets of said Church." The orders to show cause included inquiries into "the use and disposition of the property, cash or other assets of said Church." The temporary injunction restrained Wilder from interfering with the "use and disposition of the property, cash or other assets of the Church." The motion to make the injunction permanent sought to prevent interference "in the use

and disposition of the property, cash or other assets of the said Church, particularly in the use or occupancy of the parsonage or residence owned by the plaintiffs, which is commonly known and numbered as 6055 Swope Parkway, Kansas City, Missouri, * * *", and avers that said defendant refused to surrender possession of said residence property. The prayer was that, among other things, said defendant be enjoined from interfering with said residence property of the plaintiffs.

In the motion of the eight interveners for dismissal of plaintiffs' pleadings and for counter relief, they charged the plaintiffs with a denial of Rev. Wilder's "property rights (salary and other material benefits)."

■ Needless to say, the right of the owner of real estate to its use and occupancy as against one occupying it without the consent of its owner, is "a property right." Likewise, the right of the occupant to salary for alleged services rendered to the owner; the right to possess, manage and control one's "cash and other assets" as against another without the owner's consent, are "property rights." McAlister v. Pritchard, 287 Mo. 494, 230 S.W. 66, 67; 6 Words and Phrases, First Series, p. 5693; Black's Law Dictionary, Fourth Edition, p. 1382. We cannot escape the conclusion that this case involved property rights and authorized the jurisdiction asserted by the trial Court, notwithstanding the ecclesiastical aspects of the controversy.

■ Defendant's Point III challenges the court's jurisdiction because it did not first ascertain if a proper Church tribunal had determined the vacation of the pulpit. While the mere legality of removal of the Church pastor is usually an ecclesiastical matter for the determination of the Church's tribunal with which the civil courts may not interfere, yet as we have ruled above, when such removal involves the use and control of the Church property, the civil courts will exercise their jurisdiction. "Where property or civil rights are involved in the removal or discharge of a minister, the courts have jurisdiction." 76 C.J.S. Religious Societies § 89, p. 881. See Trett v. Lambeth, Mo. App., 195 S.W.2d 524; State ex rel. and to Use of Northside Church of God et al. v. Church of God et al., Mo.App., supra.

Upon examination of the book entitled "Hiscox's New Directory for Baptist Churches", adopted by the Church and introduced in evidence by defendants, from which certain rules of procedure in church trials were read into the record, it appears that the rules quoted are appended to and are explanatory of the chapter on trials of members for various offences, and that the author, in a separate special chapter treats of procedure in the trial of ministers whose conduct is believed to render them unfit to discharge their sacred office. In such cases the author suggests reference of such matters to a council for hearing and suggestions, in which proceeding the minister would have a right to appear, to have copies of charges and to examine and to hear the witnesses. The author points out, however, that such councils are advisory only; that they have no ecclesiastical authority; that judicial acts belong to the church, not the council; that the church is not obliged to accept the decision of such council if deemed wrong and unwise. The exception taken to the rules introduced, on the ground that they were inapplicable to the controversy at hand, was well taken. Furthermore, as we have noted, and as found by the court, there were no charges of Rev. Wilder's misconduct pleaded or proved in this case, the sole issue being whether or not the existing pastorate be terminated.

Being thus vested with jurisdiction, the trial court in the case at bar properly proceeded to consider the attacks made by the defendants in their pleadings as to the fact of the defendant Wilder's dismissal. In its capacity as a court of equity the court found that defendant Wilder had been dismissed as pastor of the Church by the mem-

bers, deacons and officers on June 12, 1964, at a regularly called meeting; that thereafter this suit was filed, whereupon a stipulation had been entered into by the parties plaintiff and defendant through their respective attorneys, agreeing to another such meeting on July 24, 1964, to determine if the pulpit of the Church would be declared vacant; that upon said date, after due announcement, the meeting was held and it was again determined that the pulpit be declared vacant, and that defendant Wilder be released and discharged as pastor of said Church.

■ Defendants' Points IV and V are that the court abused its discretion in issuing the temporary injunction without a hearing and for an unreasonable time and upon insufficient evidence. We deem the record sufficient to support the judgment as against those charges.

In Point VI the defendants claim error in a series of specifications as follows:

■ (a) That the court erred in overruling defendants' motion to dismiss the plaintiffs' petition. We find the record sufficient to support that ruling of the court.

(b) That the court erred in declining injunctive relief to defendants and refusing to restrain plaintiffs from interfering with defendant Wilder's restoration to the pulpit. Such action is likewise supported by the evidence and the record.

(c) That the court improperly limited defendants' evidence when plaintiffs dismissed their case as to the interpleaders, referred to in the record as "defendants", and in ruling that the interpleaders were bound by the stipulation.

■ ■ A stipulation is a proceeding in court under the court's supervision and is binding upon the court and counsel until attacked or set aside. Landers v. Smith, Mo.App., 379 S.W.2d 884, 888; Keller v. Keklikian, 362 Mo. 919, 244 S.W.2d 1004; 83 C.J.S. Stipulations § 1, p. 3. "Stipula-

tions entered into by the original parties have been held binding not only on them, but on others coming into the case by intervention." 83 C.J.S. § 14, p. 36.

■ According to the record the stipulation in this case was filed after the interveners were entered as "defendants" on their motion. It was signed, it is true, by an attorney, later shown to represent defendant Wilder at that time, but no objection was then made by any representative of the intervening parties. To the motion of the plaintiffs to make permanent the temporary injunction, the intervening parties "defendant" filed a motion to dissolve the restraining order; to dismiss the cause for want of jurisdiction and for counter injunctive relief, but made no objection to the stipulation. At the beginning of the trial the appearances showed both the attorneys for Wilder and for the interveners as representing "the defendant." In the course of the trial one attorney stated he represented Wilder, and the other said he represented the intervening "defendants." Thereupon plaintiffs dismissed as to the intervening "defendants", the court ruling that the latter could remain in as "interveners." It was then claimed by counsel for the interveners that they were not bound by the stipulation. Some of their number had, meanwhile, attended the second Church meeting provided for by the stipulation. The notice of appeal was filed "for the defendants" and signed only by the counsel previously representing merely the interveners. In its findings the Court held that the stipulation was entered into in behalf of the plaintiffs and the defendants.

It appears apparent from the record that the interveners accepted the provisions of the stipulation, to abide by them for better or for worse; that they made no objection thereto when filed nor attacked the same by their separate pleadings, and by their conduct recognized the propriety of the stipulation as suggested by the court. They are now estopped to maintain the con-

tention that they are not bound by the terms of the stipulation.

Finding no errors substantially affecting the merits of the case, the judgment should be affirmed. The Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion of DEW, Special Commissioner, is adopted as the opinion of the Court, and the judgment is affirmed.

CROSS, P. J., and HOWARD, J., concur.

BLAIR, J., not participating.